**AMERICAN LEGAL AID, INC., a Wyoming corporation, et al., Appellants (Defendants below),**

**v.**

**LEGAL AID SERVICES, INC., a Wyoming corporation, Appellee (Plaintiff below).**

**No. 4111.**

Supreme Court of Wyoming.

Dec. 6, 1972.

---

6. Marathon Oil Company v. Pan American Petroleum Corporation, Wyo., 473 P.2d 575, 577.

Mildred A. Barber, Glenrock, for appellants.

Curtis L. Harden, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This was an action by Legal Aid Services, Inc. (plaintiff below and appellee here) to enjoin the defendant, American Legal Aid, Inc. from using the term "Legal Aid" in defendant's corporate title, sales presentations, or contracts on the grounds that it was deceptively similar and therefore violated plaintiff's right as a prior incorporator to the exclusive use of the name "Legal Aid," and further, that the term "Legal Aid" in defendant's corporate name contained a phrase which indicated or implied that it was organized for a purpose other than one or more of the purposes contained in its articles of incorporation. The trial court sitting without a jury entered judgment in favor of the plaintiff and against the defendant enjoining the defendant from using the term "Legal Aid" in its corporate name, contracts, sales promotions, or in any other manner, from which judgment the defendant has appealed.

Plaintiff was organized as a Wyoming nonprofit corporation on December 19, 1966, as authorized by §§ 17–122.1 through 17–122.16, W.S.1957, for the purpose of rendering free legal services to persons of low income. It was funded by a Federal grant through the Office of Economic Opportunity, and is sponsored by the Natrona County Bar Association which contributes through its members approximately 700 hours in free legal service to the poor each year. Its board consists of five lawyers and five lay people. The lawyers are elected annually by the Natrona County Bar Association, and the lay directors are elected at a public forum conducted annually. It has made itself and its services known through various governmental sponsored agencies and via news media, and has rendered legal services to over 3,700 qualified individuals during its existence.

American Legal Aid commenced business as a proprietorship in 1970 and was financially backed by the DeBuse family. It sold memberships to the general public for reimbursement of attorney's fees incurred in specified areas according to a schedule. William A. DeBuse, Jr. prepared Articles of Incorporation for American Legal Aid and filed them in the office of the Wyoming Secretary of State on June 16, 1970. In the spring of 1971 the defendant corporation conducted a rather extensive selling campaign and contacted as many as 20,000 people in Natrona County, Wyoming. Through July of 1971 it had sold about 2,300 memberships.

The defendant's brief does not contain a subject index, table of cases, statutes and authorities cited, nor does it set forth a specific enumeration of the points upon which it relies for reversal as required by Rule 12 of the Rules of the Supreme Court. It is therefore with some difficulty that we undertake to examine defendant's brief to determine its contentions. We have therefore examined the record to determine if there was sufficient credible evidence to support the findings and judgment of the trial court.

In its letter opinion, referred to in the judgment, the trial court found that the evidence disclosed there was confusion as to the identities of the two corporations. It also found that the predominant words were "Legal Aid," and that those words had acquired a secondary meaning in the Natrona County community where, through extensive public relations and operational activity since 1966, the plaintiff had become known for its free services to the indigent. The trial court further found that the evidence disclosed the defendant exploited this; that the public was deceived and misled into believing the two corporations were in some way connected; and that the standing and goodwill of the plaintiff corporation was entitled to protection. The trial court also made favorable

reference to a previous decision of this court which it thought had some application to this case. (DeBruyn v. Golden Age Club of Cheyenne, Wyo., 399 P.2d 390.) There we held that under the facts the name "Golden Age Club" had acquired a secondary meaning, and the prior users of the name were entitled to protection if the natural result of the use of the same name by another was to confuse, mislead, or actually deceive the public.

There was considerable evidence that many people were confused about the two corporations, especially following the extensive telephone campaign of the defendant in the spring. Curtis L. Harden, attorney at law and executive director of plaintiff, Legal Aid Services, Inc., testified without objection that in the winter and spring of 1971 members of the Natrona County Bar Association were besieged by telephone calls from clients asking about the telephone solicitations which were thought to have been made by the plaintiff, Legal Aid Services, Inc. A committee was appointed to look into the matter and it was determined that the solicitations were not being made by plaintiff but were made by the defendant. There was evidence that some people contacted the defendant corporation when in fact they sought plaintiff corporation, and some people sought the plaintiff but contacted the defendant. Many people thought the two corporations were one and the same. As stated in 6 Fletcher Cyclopedia Corporations, § 2429, pp. 93–95 (Permanent Edition):

"What degree of resemblance or similarity between the names of the two companies will warrant the interference of the court is not capable of exact definition. It is and must be a matter to be determined from the facts and circumstances accompanying each particular case, and no inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. It has been remarked by the courts that authorities upon the question are of little help, so varied are the facts and circumstances surrounding each case."

We think that here there was sufficient credible evidence to support the findings of the trial court.

The defendant has cited cases in which the court refused to enjoin the use of similar names. However, there are many cases in which an injunction was held to have been properly granted.[1] It was held that an injunction was properly granted in view of evidence that the words "Security Title" had obtained a secondary meaning synonymous with plaintiffs in Security Title Insurance Agency v. Security Title Insurance Company, 15 Utah 2d 93, 387 P.2d 691. We think what was said in Marsalli's Blue Ribbon Coffee v. Blue Ribbon Products Co., 159 Cal.App.2d 357, 323 P.2d 787 at 791, is particularly applicable to this case:

"In this case we find * * *. The choice of these two words [Blue Ribbon] must surely be attributable to something more than sheer coincidence. Under the circumstances it is difficult to find any justification for permitting appellants to use those words at all in their proposed business whether alone or in conjunction with other words."

There was evidence that the defendant, William A. DeBuse, Jr., deliberately or thoughtlessly selected a name to which plaintiff had acquired a prior right. A court of equity may grant injunctive relief against a defendant corporation wrongfully using a name similar to a plaintiff corporation's name, particularly where hardship or damage to defendant is not great. The defendant may under the Wyoming Business Corporation Act[2] by a comparatively simple process change its name. It would thus

---

1. See the extensive discussion of this question in the recent case of Ball v. American Trial Lawyers Association, 14 Cal.App.3d 289, 92 Cal.Rptr. 228, and cases cited therein.

2. Section 17–36.51, W.S.1957, (the same as § 58 of the Model Business Corporation Act) provides for a change of corporate name by amendment of Articles of Incorporation.

appear that the defendant need not interrupt its business but could in a few days' time change its name and continue to conduct its activities with any of the rights and privileges that it had before the name change.

In addition to seeking equitable relief the plaintiff pleaded that it was entitled to protection under a statute. Plaintiff argued that under § 17–36.7(b), W.S. 1957, the defendant was prohibited from adopting the same or similar name as that of an existing organization, and that this statutory protection afforded against the wrongful use is more comprehensive than that given under equity. It may well be that this statute does enlarge the protection, but it has no application to the case at hand. Section 17–36.7(b), the pertinent portion of which is similar to § 8(c) of the Model Business Corporation Act, provides:

"The corporate name: * * * (b) Shall not be the same as, or deceptively similar to, the name of any domestic corporation * * *."

Section 17–36.2, W.S.1957, defines a "domestic corporation" as a corporation organized for profit. Plaintiff is a nonprofit corporation, and therefore this section has no application as to it.

The defendant argued that plaintiff was "* * * estopped from protection of the court through injunctive relief * * *" for two reasons. In support of its estoppel argument the defendant pointed out that prior to incorporation of the defendant corporation Mr. William A. DeBuse, Jr. had consulted with Mr. Hobart B. Harden, Jr., attorney at law, concerning the legality of the membership certificate, at which time Mr. Harden was a director of the plaintiff corporation and had been one of the incorporators. The second reason advanced was that the plaintiff waited for more than a year after the defendant was incorporated before taking any action. While the first point was raised in the pleadings, the other point in the argument was not. Neither point was seriously pursued in the trial court. In any event, the defendant's argument is unpersuasive and merits no discussion by this court.

Affirmed.