**J. A. DOUGHERTY'S SONS, Inc., DISTILLERS, v. KASKO DISTILLERS PRODUCTS CORPORATION.**

No. 365.

District Court, E. D. Pennsylvania.

Nov. 19, 1940.

Beekman Aitken, of New York City, and Marshall Coyne, of Philadelphia, Pa., for plaintiff.

Jerome J. Rothschild and Fox, Rothschild, O'Brien & Frankel, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This suit was instituted by J. A. Dougherty's Sons, Inc., Distillers, against the Kasko Distillers Products Corporation, to obtain an injunction restraining the Kasko corporation from infringing upon the rights of the plaintiff in the trade-mark "Country Gentleman", using it in any manner, or otherwise unfairly competing with the plaintiff. The plaintiff prayed for further relief in the form of an accounting of damages done to the plaintiff and profits received by the defendant as a result of the defendant's use of the trade-mark "Country Gentleman". Other relief, auxiliary to the injunctive relief, was also sought.

In its complaint, the plaintiff avers that it had been in the business of manufacturing and distributing distilled spirits prior to April, 1932, and that during April it selected as a trade-mark for its products the words "Country Gentleman". It is further averred that, during April 1932, under special government permit, the plaintiff commenced to distribute and sell distilled spirits in bottles labelled "Country Gentleman", within Pennsylvania and throughout the United States. The product so labelled is alleged to have been and now to be one of high quality. Large sums of money are alleged to have been spent in promoting the sale of the product in the United States generally and in Pennsylvania particularly. These expenditures, the plaintiff avers, resulted in the sale of large quantities of the product in the United States and Pennsylvania. By reason of these alleged facts, the plaintiff avers that it thereby became and now is the owner of the exclusive right to use this trade-mark in connection with sale of its liquor products in interstate commerce.

The plaintiff avers that the defendant, with knowledge of the plaintiff's prior use of and success with the trade-mark "Country Gentleman", began, in June 1934, to put out and distribute and sell, in Pennsylvania and other states, corn whiskey in bottles labelled similarly to those of the plaintiff. These alleged acts of the defendant have, it is averred, constituted unfair competition and an infringement of the plaintiff's rights resulting in damage to the plaintiff and profit to the defendant.

It is admitted by the defendant that it adopted the trade-mark "Country Gentleman" in June, 1934, and averred that it adopted the same only after thorough investigation revealed no prior or current use. The defendant denies that it knew of the alleged prior appropriation by the plaintiff until the plaintiff informed the defendant of the plaintiff's claim to priority in April, 1939. The defendant further avers that it spent large sums of money to acquire its allegedly large volume of sales of corn whiskey under the "Country Gentleman" label. Valuable good will is averred as another result of defendant's expenditures and efforts. The defendant denies that the plaintiff has spent large sums for promotion and advertising of its "Country Gentleman" brand and alleges that the plaintiff spent no money for such purposes during the last five years preceding the filing of its complaint. The defendant also alleges that the plaintiff has sold no whiskey under the "Country Gentleman" trade-mark in Pennsylvania during the last five years preceding the filing of the complaint. Defendant avers that the plaintiff has known of the defendant's use of the trade-mark "Country Gentleman" for several years and has been delinquent in instituting an action for protection of the plaintiff's alleged rights in the trade-mark. Defendant finally denies that its acts constitute an infringement of the plaintiff's rights.

A counterclaim was asserted by the defendant for injunctive and other relief similar to that sought by the plaintiff against the defendant. In addition to averments appearing in the answer, the defendant avers that it registered the trade-mark with the proper United States and Pennsylvania authorities in June and September, 1934, that plaintiff has long known of the defendant's use of the trade-mark, and that the plaintiff contemplates appropriation of

the defendant's good will pertaining to the trade-mark.

The plaintiff answered the counterclaim, denying the material averments thereof and reiterating its previous position that it is the owner of exclusive rights in the trade-mark "Country Gentleman" and demanding that the counterclaim be dismissed.

Trial was had before the court without a jury. Thereafter, and before judgment, the plaintiff moved for a partial new trial under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground of newly discovered evidence. This motion was not formally determined, but the evidence was considered, along with the evidence previously adduced, in the instant findings of fact.

I make the following special findings of fact:

1. The plaintiff is a Maryland corporation organized and existing under the laws of the State of Maryland, and is engaged in the business of bottling and selling whiskies, with its principal place of business in Philadelphia, Pennsylvania.

2. The defendant is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of bottling and selling whiskies, with its principal place of businesss in Philadelphia, Pennsylvania.

3. The plaintiff commenced to sell whiskey under the trade-mark "Country Gentleman" during April, 1932.

4. The sales referred to in paragraph three were under a special permit from the United States Treasury Department, authorizing the sale of whiskey for medicinal purposes only.

5. The plaintiff sold whiskey trademarked "Country Gentleman" to purchasers in Pennsylvania and in the United States generally, for medicinal purposes, between April, 1932, and December, 1933, when the Eighteenth Amendment was repealed.

6. From the date of the repeal of the Eighteenth Amendment until the effective date of the Pennsylvania Liquor Control Act, January 1, 1934, 47 P.S. § 744—1 et seq., the plaintiff sold "Country Gentleman" whiskey to but one purchaser, The Adelphia Hotel, Philadelphia, Pennsylvania.

7. Since January 1, 1934, the Pennsylvania Liquor Control Board has been the only agency for distribution and marketing of spiritous liquors in Pennsylvania.

8. Between January 1, 1934, and April 5, 1934, the plaintiff sold three cases of "Country Gentleman" to the Pennsylvania Liquor Control Board on special order.

9. Since April 5, 1934, the plaintiff, though making sales in adjacent states and in the United States generally, has made no sales to the Pennsylvania Liquor Control Board.

10. Since April 5, 1934, the plaintiff has made no effort and spent no money to promote sales of its "Country Gentleman" brand in Pennsylvania.

11. In June, 1934, the defendant, after reasonable and customary investigation as to its prior or current use revealed no prior or current user of the trade-mark "Country Gentleman", innocently, in good faith, and without any knowledge of its prior use, commenced to use the trade-mark "Country Gentleman" for its whiskey.

12. The defendant registered this trademark with the proper Pennsylvania and United States authorities in September, 1934, and June, 1935, respectively, although the United States Patent Office, in proceedings instituted by the plaintiff, recommended on November 8, 1940, that this registration be cancelled.

13. The defendant, since June, 1934, has spent over $80,000 to publicize and promote the "Country Gentleman" brand in Pennsylvania.

14. Since June, 1934, the defendant has sold increasingly large amounts of whiskey under the trade-mark "Country Gentleman" to the Pennsylvania Liquor Control Board.

15. The defendant now sells to the Pennsylvania Liquor Control Board over 80% of the corn whiskey sold in Pennsylvania, and sold whiskey of a retail value of nearly $1,000,000 in 1939 to the Board— all of which was trade-marked "Country Gentleman".

16. The plaintiff knew of the defendant's use of the trade-mark "Country Gentleman" on or before the year 1937.

17. The plaintiff made no objection to the defendant's use of the trade-mark "Country Gentleman" until April 28, 1939.

18. The plaintiff did not affirmatively consent to the defendant's continued use of the trade-mark "Country Gentleman".

19. The defendant's "Country Gentleman" has the exclusive recognition of the Pennsylvania market.

20. The plaintiff's "Country Gentleman" is known in the "Philadelphia Market

564

Area", but not to the consuming public in Pennsylvania.

21. The defendant has established a valuable trade in its "Country Gentleman" brand in Pennsylvania.

### Discussion.

■■ There is no such thing as a valid trade-mark except as appurtenant to an established and continuing business with which it is employed. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Ph. Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699. Although it was the rule that the right of protection would not be projected in advance of the extension of trade, United Drug Co. v. Theodore Rectanus Co., supra, and Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, protection will now be accorded in areas where the business is developing or where expansion is a normal expectation. Sweet Sixteen Co. v. Sweet "16" Shop, 8 Cir., 15 F.2d 920; Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205.

■ In order that a trade-mark be established as appurtenant to a business in a particular area, there must be an actual occupation of the market by that business. Levy v. Waitt, 1 Cir., 61 F. 1008, 25 L.R.A. 190. It is not clear that to make a few spasmodic sales, such as were made by the plaintiff in the instant case after repeal of the Eighteenth Amendment, is sufficient. Some sales were made prior to repeal to druggists and doctors for medicinal purposes, but the market created by repeal was immeasurably larger and altogether different in nature than that existing theretofore.

The plaintiff did appropriate the trademark and did, prior to the repeal of the Eighteenth Amendment, make a number of sales. I deem those sales sufficient to have created a trade-mark right in the plaintiff in that pre-repeal market. The plaintiff, of course, had a right to use that trade-mark in the new and different market created by repeal, there then being no other user. After repeal, and the institution of the Pennsylvania Liquor Control Board, the administrative agency of the State's liquor monopoly system, the plaintiff evinced no intention to promote sales in Pennsylvania. So complete was its withdrawal, voluntarily chosen or a result of a lack of demand, that the defendant, an active concern, had no knowledge of the "Country Gentleman" brand of the plaintiff.

■■ However, the plaintiff first used the trade-mark "Country Gentleman". It has continued to use it as an appurtenance to its business, though now doing no business in Pennsylvania. Failure to evince intent to continue in Pennsylvania and absence of sales in Pennsylvania for several years are evidence of intent of the plaintiff to abandon and not again use the trademark in Pennsylvania. But plaintiff was willing to serve the Pennsylvania market and did serve markets adjacent to Pennsylvania. In the face of this, abandonment of the trade-mark cannot be inferred. Property in and protection of appurtenances to trade is not dependent upon the amount of business done, so long as there is persistent and continuing activity or intent to become active again in the market concerned.

■ However, the defendant has innocently built up a large and valuable business in corn whiskey under the trade-mark "Country Gentleman", and during the last few years of the defendant's innocent activity, the plaintiff has been aware of this and failed to inform the defendant of any rights in the trade-mark or institute action to enforce those rights. Upon these facts it is difficult to justify an award to the plaintiff of the relief he seeks. That the circumstances bar an accounting appears indisputable.

If possible, the defendant should be afforded an opportunity to continue the business which it has innocently and by commendable diligence developed to a most lucrative degree. The plaintiff's failure to act when informed of the defendant's use of the trade-mark "Country Gentleman", which failure resulted in continued innocent promotion by the defendant, cannot be interpreted as evidence of good faith.

■ There are authorities for the plaintiff's contention that its "mere" failure to act quickly does not bar it from injunctive relief unless the delay has been so long and under such circumstances as to defeat the right itself. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. However, upon investigation it must be concluded that this case presents a circumstance outside the scope of the cited authorities. Where the delay results in a situation inequitable to alter, equity won't enjoin its continuance if its origin was innocent. Old Lexington Club D. Co. v. Kentucky D. & W. Co., D.C., 234 F. 464;

Procter & Gamble Co. v. J. L. Prescott Co., 3 Cir., 102 F.2d 773. To permit another to build up his business reputation and thereafter, by asserting a right to the trade-mark, acquire the benefits of the reputation seems inequitable. Though I do not decide that such is the purpose of the plaintiff, it is apparent that an award of the relief asked would place it in a position to do so. At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use, by others, for a long period, in face of the complainant's inaction, has largely enhanced the reputation of a particular brand.

The recent case in this District of Bisceglia Bros. Corporation v. Fruit Industries, 20 F.Supp. 564, 565, affirmed 3 Cir., 101 F.2d 752, affords support for these conclusions. There are definite factual differences between that case and this, but they are not so fundamental that the equitable concepts therein resorted to are beyond the scope of the present factual situation.

█ Since the plaintiff has made sales in states adjacent to Pennsylvania, it is contended that the defendant's very numerous sales in Pennsylvania have promoted confusion and deceived the public as to the identity of the brand concerned, insofar as they have "filtered" into the adjacent states. The case of Terminal Barber Shops v. Zoberg, 2 Cir., 28 F.2d 807, presents an example of the effect likely to result from the use by separate parties in adjacent markets of the same trade-mark or trade-name. The defendant in New Jersey adopted the trade-name which was used in New York City by the plaintiff. The defendant, by operating in areas contiguous to the location of the plaintiff's shops took advantage of and profited by the reputation of the plaintiff. The result to the plaintiff was a loss of customers who formerly had come from the area in which the defendant operated. The plaintiff was granted injunctive relief against the defendant. While this affords an analogy, it is not a perfect one. The parties in the instant case are selling merchandise of distinctly different qualities, and the separate state control renders the sales less likely to be intermixed. However, even assuming without admitting that some slight confusion may result, I am satisfied that, in view of all the facts of this case it is not inequitable to decree that the defendant shall hereafter have the right to use the trade-mark "Country Gentleman" within the Commonwealth of Pennsylvania, free from interference by the plaintiff, so long as the defendant restricts itself to that area.

### Conclusions of Law.

1. The plaintiff obtained the right to use the trade-mark "Country Gentleman" as a business appurtenance in 1932.

2. This right was limited to the areas the plaintiff then occupied, was then entering, or would enter in the normal course of business expansion.

3. The markets created by the repeal of the Eighteenth Amendment, including that peculiar to Pennsylvania, were markets into which the plaintiff could enter in the normal course of business expansion.

4. The plaintiff has the right to use the trade-mark in those states in which it is appurtenant to his business or normally expanded business.

5. This right includes the right to protection by injunction restraining activities infringing on it or unfairly competing with its exercise.

6. The plaintiff's delay in prosecuting this right, while the defendant innocently built up a valuable business in Pennsylvania bars the plaintiff from an accounting and from the protection defined in paragraph five, insofar as concerns the defendant's sales in Pennsylvania.

7. The plaintiff is entitled to a decree enjoining the defendant from using the trade-mark "Country Gentleman" in those areas outside of Pennsylvania where the plaintiff is using the same or may do so in the course of normal sales expansion, and from otherwise unfairly competing with the plaintiff's use of the trade-mark "Country Gentleman" in those areas; this decree to be conditional upon a restriction, by the plaintiff, of its use of the trade-mark "Country Gentleman" to areas exclusive of Pennsylvania, and upon the plaintiff's restraint from unfair competition with the defendant in the latter's use of the trade-mark "Country Gentleman" in Pennsylvania.

8. The defendant is entitled to a decree enjoining the plaintiff from using the trade-mark "Country Gentleman" in Pennsylvania, and from otherwise unfairly competing with the defendant's use of the trade-mark "Country Gentleman" in that state; this decree to be conditional upon a restriction, by the defendant, of its use of the trade-mark "Country Gentleman" to Penn-

sylvania and areas not subject to occupation by the plaintiff in the normal course of expansion of the plaintiff's sales, and upon the defendant's restraint from unfair competition with the plaintiff in the latter's use of the trade-mark "Country Gentleman" in areas exclusive of Pennsylvania where the plaintiff is using the trade-mark or may do so in the normal expansion of its sales.

9. In light of the circumstances herein noted and others made apparent in the course of the trial, it is deemed proper that each party should bear its own costs.

10. A decree in accordance with the findings and conclusions herein may be submitted for entry as the order of this court.

The requests for findings of fact and conclusions of law are affirmed to the extent consistent herewith, and denied insofar as inconsistent herewith.